Forrest R. Gable and Gloria J. Gable, Appellants, *v.* Springfield Township Zoning Hearing Board, Appellee.

Argued October 8, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, ROGERS and BLATT. Judge KRAMER did not par-
ticipate. Reargued March 3, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Samuel A. Litzenberger*, for appellants.

*Victor S. Jaczun,* for appellee.

OPINION BY JUDGE ROGERS, April 18, 1975:
This is the appeal of Forrest R. Gable and Gloria J.
Gable, his wife, from an order of the Court of Common

Pleas of Bucks County, affirming the decision of the Springfield Township Zoning Hearing Board denying the appellants' application for a variance and dismissing their appeal from a zoning officer's refusal to issue permits for the construction of apartment houses in a single-family dwelling zoning district.

The court below not having received additional evidence, our review is limited to determining whether the Zoning Hearing Board abused its discretion or committed an error of law. *Township of Abington v. Rocks Associates, Inc.,* 11 Pa. Commonwealth Ct. 95, 312 A.2d 98 (1973).

The facts which it is necessary to detail are as follows: Mr. and Mrs. Gable purchased the land which is the subject of this litigation in July of 1965. Their tract contains approximately 21½ acres, of which about 9½ acres is located in Springfield Township, Bucks County, and the remainder in Lower Saucon Township, Northampton County. They constructed a four-unit apartment house in 1967 which, except for a corner of the building, is located entirely in Lower Saucon Township, Northampton County.

On or about July 29, 1968, the Gables filed with the Bucks County Planning Commission and the municipal authorities of Springfield Township a preliminary plan or plat of subdivision of the 9½ acres of their land located in Springfield Township, on which plan were plotted about 15 four-unit apartment houses. On August 8, 1968, the Bucks County Planning Commission deferred action on the plan. On January 31, 1969, the Springfield Township Planning Commission recommended its approval.

In April 1969, the Gables renewed their application for approval of the plan to the Bucks County Planning Commission, this time as a final plan. It is not clear what, if any, changes of the original plan were made between July 1968 and April 1969.[1] On April 16, 1969, the Bucks County

---

1. The plan finally recorded in the office of the Recorder of Deeds in August of 1969 bears the date July 23, 1968 and contains no notations indicating revisions.

Planning Commission listed certain items of information which should be furnished for its consideration of the plan and additionally advised the Gables that a Bucks County zoning ordinance was under consideration and that they should have plan approval prior to its adoption. On April 25, 1969, counsel for the Gables wrote to then counsel for the township asking the supervisors to act on the plan and advising them that the Bucks County Planning Commission proposed to pass on it on May 7, 1969.

*On May 7, 1969, the County Planning Commission approved the Gables' plat as a final plan,* subject to the submission of a proposed onsite sewage system approved by the Department of Health and review of the plan by the Springfield Township Planning Commission and Board of Supervisors. The sewage permits which had been applied for long before, were finally issued by the Department of Health in August or September of 1969. The Springfield Township Supervisors took no action on the plan until June 10, 1969 when they approved it, in response, we are told, to a suit or threat of suit in mandamus.

A Bucks County zoning ordinance was adopted on May 9, 1969, effective May 19, 1969. It placed the Gables' property in a residential zoning district not providing for apartment use. On May 26, 1969, the zoning officer of Bucks County advised the Gables that they would be required to apply for and receive a zoning permit for any construction.

On December 18, 1970, the Gables applied for and received from the office of the Bucks County zoning officer a zoning permit for the construction of one four-unit apartment building. The county zoning officer who had been absent on vacation when the permit was issued, revoked the permit and issued a cease and desist order on January 7, 1971. The Gables disregarded the zoning officer's action and proceeded with the construction of the apartment building in Springfield Township.

Springfield Township adopted a zoning ordinance in February of 1971. By statute[2] it had the effect of repealing the Bucks County zoning ordinance within the township. The township ordinance also placed the Gables' property in a residential zone where apartments were not a permitted use.

On February 12, 1972, the Gables applied to the Springfield Township zoning officer for permits to construct three additional apartment houses. The zoning officer refused permits on the ground that the use proposed was not one permitted by the township zoning ordinance. The Gables appealed this action to the Zoning Hearing Board asking for a variance and for a reversal of the zoning officer's refusal of the permits on the ground that the proposed construction was a lawful expansion of an established nonconforming use. As noted, the Board denied the variance and held that the nonconforming use had not been established. The court below affirmed the Board and this appeal followed.

When the case was first briefed and argued the provisions relating to subdivisions of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. §10101 et seq., hereinafter referred to as MPC, which became effective January 1, 1969,[3] were not mentioned by either party. Because they seem to us to be crucial to the issue of whether the Gables were entitled to the zoning permits they sought from the township, we ordered reargument on this issue.

Prior to the effective date of the MPC, subsivisions in Second Class Townships, the classification of Springfield Township, were subject to regulation by, and required approval of, both County Planning Commissions, where such had been created by the County Commissioners, (Sections

---

2. Section 602 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, 53 P.S. §10602.

3. 53 P.S. §10102.

2001 through 2008 of the County Code, Act of August 9, 1955, P.L. 323, 16 P.S. §§2001 through 2008), and Boards of Township Supervisors, (Article XII-A of the Second Class Township Code, Act of May 1, 1933, P.L. 103, added by the Act of May 24, 1951, P.L. 370, *as amended*, 53 P.S. §§66251 through 66256). Both Counties and Second Class Townships were empowered to adopt subdivision regulations. The townships, however, frequently did not adopt regulations of their own. In practice, plans of subdivision were submitted for approval to both the county planning commissions and township supervisors although the latter had not adopted subdivision regulations, because the wording of Section 1206-A of Article XII-A of the Second Class Township Code, 53 P.S. §66256, seemed to indicate that the supervisors' approval was necessary whether or not subdivision regulations had been adopted, at least where new streets were proposed.

The MPC dispensed with these onerous dual requirements, repealed both the cited provisions of the County Code and the Second Class Township Code, and provided by Section 502 that the county regulations and approval authority will apply only where the township had adopted no subdivision regulations.[4]

We have read and reread the instant record and it is clear to us that Springfield Township had no subdivision regulations at any of the times relevant to this case, but that Bucks County did. Therefore, after January 1, 1969, the Gables were not required to obtain the approval of their plan by the township supervisors. They were required to and did obtain the approval of their plan, as a final plan, by the Bucks County Planning Commission onMay 7, 1969, two days before the adoption of the Bucks County zoning

---

4. Section 502 does, however, provide that the County Planning Commission should review and report on plans submitted to townships having regulations. It does not require township review and report where the County has and the Township does not have subdivision regulations.

ordinance and twelve days before its effective date. This approval also obviously antedated the Springfield Township zoning ordiance adopted in February of 1971.

We pass now to the controlling provisions of Section 508 of the MPC, 53 P.S. §10508, which was in 1969 pertinently as follows:

"Approval of Plats.—All applications for approval of a plat . . . , whether preliminary or final, shall be acted upon by the governing body within such time limits as may be fixed in the subdivision and land development ordinance but the governing body shall render its decision and communicate it to the applicant not later than forty days after such application is filed.

. . . .

"(4) From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. In addition, when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided. However, if an application is properly and finally denied, any subsequent application shall be subject to the intervening change in governing regulations. *When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the*

*applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval* within three years from such approval. Where final approval is preceded by preliminary approval, the three-year period shall be counted from the date of the preliminary approval. In the case of any doubt as to the terms of a preliminary approval, the terms shall be construed in the light of the provisions of the governing ordinances or plans as they stood at the time when the application for such approval was duly filed." (Emphasis supplied.)

Applying the facts of this case to the law as promulgated in Section 508(4), we observe that the Gables' plan or plat was approved by the Bucks County Planning Commission on May 7, 1969, subject to conditions acceptable to the Gables, as evidenced by their subsequent production of sewage permits and securing approval of the plan by township supervisors. No change in zoning regulations could affect adversely their right to commence and complete their development within three years from May 7, 1969.[5] Their application for zoning permits to the Springfield Township zoning officer was made on February 16, 1972. We are, therefore, compelled to hold that the refusal of their application based on the township zoning ordinance by the zoning officer and the affirmance of his action by the Zoning Hearing Board were erroneous in law.

Order reversed; the record is remanded with direction that building permits applied for be issued.

----

5. In *Friendship Builders v. West Brandywine Township Zoning Hearing Board*, 1 Pa. Commonwealth Ct. 25, 28, 271 A.2d 511, 513 (1970) there is a dictum to the effect that the use in section 508(4) of the words "change or amendment" of zoning requirements would render the statute inapplicable to a case where zoning regulations are adopted for the first time after plan approval. Our decision here is obviously to the contrary of that dictum.