Friendship Builders, Inc. *v.* West Brandywine Township Zoning Hearing Board.

Argued October 7, 1970, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI.

*Lawrence Sager,* with him, *Sager & Sager, for* appellant.

*John E. Good,* for appellee.

OPINION BY JUDGE MENCER, filed November 19, 1970.

On May 2, 1968 John Eshelman, President of Friendship Builders, Inc., and owner of a tract of land in West Brandywine Township, Chester County, received approval from the supervisors of that township of a subdivision plan comprising thirty-two (32) lots numbered 90 through 121. These lots averaged 22,000 square feet in area. The township had no zoning ordi-

nance applicable to the property on the date of the approval of the subdivision plan. Subsequently a zoning ordinance was enacted on October 3, 1968 which established minimum lot requirements of 30,000 square feet for the property in question. Friendship Builders, Inc., hereinafter referred to as appellant, had an option to build houses on Eshleman's land and applied in March 1969 for certain permits to erect houses on lots as laid out on the approved subdivision plan. The application for the permits was refused and appellant appealed to the Board of Adjustment. The Board granted variances to build houses on lots 105 to 109 inclusive, and refused building permits for the remaining lots. Appellant then appealed to the Court of Common Pleas of Chester County which affirmed the decision of the Board. This appeal followed.

Appellant asserts that it has a vested interest as a result of the approval of its subdivision plan prior to the Township's adoption of a new ordinance providing for a larger lot size than was set forth in the previously approved plan. It is contended that §508(4) of the Pennsylvania Muncipalities Planning Code, Act of July 31, 1968, P. L.    , No. 247, 53 P.S. §10508 is controlling in the instant case. This section provides, inter alia: "When an application for approval of a plot whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the terms of such approval within three years from such approval. Where final approval is preceded by preliminary approval, the three-year period shall be counted from the date of preliminary approval."

We conclude that the Pennsylvania Municipalities Planning Code is not involved in this appeal. Section

102 of the Code, 53 P.S. §10102, provides that the effective date of the Act is January 1, 1969. The zoning ordinance in question on this appeal was enacted October 3, 1968. In addition, §508(4), 53 P.S. §10508, relied on by appellant relates specifically to a change or amendment in the zoning, subdivision or other governing ordinance, whereas the fact situation in the present case clearly establishes that the zoning ordinance enacted by the appellee was the first such ordinance, not a change in or amendment to any previous zoning ordinance.

Appellant also asserts that this appeal is controlled by *Gallagher v. Building Inspector, City of Erie*, 432 Pa. 301, 247 A. 2d 572 (1968) and *Cheltenham Township Appeal*, 413 Pa. 379, 196 A. 2d 363 (1964).

In *Gallagher*, the landowners were issued building permits for the erection of town houses, and approximately three months later the city amended its zoning ordinance so as to prohibit the erection of town houses in the area which encompassed the land covered by the building permits. The city revoked the permits and on appeal our Supreme Court held that the landowners did have a vested right in the permits which had been issued as a matter of right under the then existing law. We distinguish the instant appeal because there were never any building permits issued which were revoked or affected by the enactment of the zoning ordinance. Appellant did not apply for the permit until after the enactment of the zoning ordinance.

The appellant proceeded, after the new ordinance, without applying for building permits, to dig cellars and build foundations on lots 105 through 109. As the lower court noted, it was fortunate for the appellant that the Board most generously authorized permits nunc pro tunc for these houses under the guise of a variance. However, such undeserved benefit accorded to the appellant is no legal basis for the issuance of addi-

tional permits requested after the passage of the new ordinance.

The facts in this case clearly distinguish it from the case of *Cheltenham Township Appeal,* supra, where the court recognized that a developer may obtain vested rights in a subdivision plan where the integrated, comprehensive, staged development of a large tract of land may and should be treated as a single undertaking. In *Cheltenham,* a detailed plan of development of approximately 150 acres was implemented by a township zoning ordinance which rezoned 33 acres to FF Commercial and the remaining acreage to FFF Commercial. The detailed plan contemplated a shopping center and parking area on the 33-acre tract and high-rise apartment buildings, a hotel and an office building on the other tract. A building permit was issued for the first apartment building, without objection, and the installation of sewerage and electrical systems to serve the entire development was begun. Some seven months after issuance of the first permit, a building permit was issued for the construction of a store in the shopping center, whereupon a civic association filed its timely appeal from the issuance of the second permit, but its objections were to the entire comprehensive development. The Court held that the protestants waived their right to object when they failed to appeal from the issuance of the first permit. The total cost of the undertaking was estimated at $50,000,000. More than $3,-150,000 had been expended to purchase land; a $7,500,-000 loan had been obtained; leases had been signed and a general building contractor had been engaged.

In the instant case, appellant had an option to purchase lots from Eshleman at such times as they decided to build a house on a given lot. Upon the completion and sale of the house, appellant would pay Eshleman for the lot. The record before the Board suggests that under this arrangement, nineteen or twen-

ty houses were built over a period of four years with perhaps five of the houses on land covered by the approved subdivision plan, but that a building permit was sought and issued for each house. Such a building program does not constitute an integrated, comprehensive or staged development as existed in the Cheltenham case.

The appellant acknowledges that the only consequence flowing from the requirements of the new ordinance would be the elimination of four or five lots from the subdivision plan as originally approved. There is no evidence in the record that even then any financial loss would follow. The record fails to establish any dollar expenditure by appellant prior to applying for the permits, but does show that a street was rough-graded and that the installation of a water main and several laterals was underway at the time the request for permits was made. However, since the Board did issue permits for five lots, under a variance, much, if not all, of the work and cost of rough-grading and installing water lines was utilized in connection with these five lots.

The appellant would point to the well established principle of law that when a property owner has in good faith expended money or incurred liabilities in reliance on a building permit obtained under the then existing law, he acquires a vested right which entitles him to protection against a subsequently enacted zoning ordinance: *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195 (1930); *Lower Merion Township v. Frankel,* 358 Pa. 430, 57 A. 2d 900 (1948). They lose sight of the fact, however, that in order to enable the owner to claim such right he must establish that his expenditures were made in reliance on a building permit previously issued to him, that they were made before the enactment of the new zoning ordinance, and that they were substantial in amount: *Gold v. Building Committee of*

*Warren Borough,* 334 Pa. 10, 5 A. 2d 367 (1939); *Ventresca v. Exley,* 358 Pa. 98, 56 A. 2d 210 (1948); *A. N. "Ab" Young Company Zoning Case,* 360 Pa. 429, 61 A. 2d 839 (1948); *Appeal of Mutual Supply Company,* 366 Pa. 424, 77 A. 2d 612 (1951); *Appeal of Dunlap,* 370 Pa. 31, 87 A. 2d 299 (1952).

It is to be noted that in the Herskovits case the property owners had entered into a building contract involving a substantial obligation on their part, and in the Lower Merion Township case the owner had likewise incurred large expenses and obligations in furtherance of his contemplated use of the property. In the present case no building permits were issued or relied upon and no substantial expenditures were made before the enactment of the initial zoning ordinance covering the property.

Finally, it is asserted by appellant that the nonconforming use section of the initial ordinance enacted October 3, 1968 permits the retention of the lot sizes under the approved subdivision plan. This section does not so provide since the question here is not the use of a lot but the size and area of the lot. The use before and following the ordinance was residential.

We believe this case is ruled by *York Township Zoning Board of Adjustment v. Brown,* 407 Pa. 649, 182 A. 2d 706 (1962). In that case the property owners applied for special exceptions from a zoning ordinance's area and width requirements as to certain lots in land subdivisions owned and developed by them. The following language appearing on page 652 of that opinion is relevant. "Nor can we agree with appellant's contention that with respect to those subdivision plans approved by the township prior to the zoning ordinance, there was created a vested right to subdivide the lots as so approved. As succinctly stated by this same lower court in York Township Zoning Board v. Brown, 74 York 197 (1960) 'In the abstract, it is highly desir-

able in the zoning process that pre-existing land subdivisions should conform to later zoning laws. Otherwise, subdivisions in their infancy could perpetuate for years the problems zoning was designed to eliminate. Furthermore, the financial hardship on the owner in complying is not nearly as great as that of the operator of a proscribed business who faces complete annihilation. Land subdivisions usually can be made to conform by enlarging lot sizes or combining two lots into one. True it is that such action produces less profit to the subdivider than he had anticipated. Yet it no longer requires citation of authority to show that failure to realize anticipated profits furnishes no basis for exception from the zoning process'."

The action of the court below in affirming the decision of the Board's refusal of the variances and issuance of permits sought by appellant is amply supported by the record and by the law. We find no abuse of discretion.

Order affirmed.