Mid-County Manor, Inc. *v.* The Haverford Township Board of Commissioners and Charles T. Held, Township Building Inspector and Zoning Officer. Haverford Township, Appellant.

Mid-County Manor, Inc., Appellant *v.* The Haverford Township Board of Commissioners and Charles T. Held, Township Building Inspector and Zoning Officer, Appellees.

150

Argued June 2, 1975, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*William E. Mowatt*, with him *Mowatt, McErlean,
Pinto, Theodore & Rubin*, for Board of Commissioners,
Township of Haverford.

*Marc D. Jonas*, with him *Morris Gerber*, and *Gerber,
Davenport & Wilenzik*, for Mid-County Manor, Inc.

OPINION BY JUDGE BLATT, December 3, 1975:

This action involves appeals by Mid-County Manor,
Inc. (Mid-County) and the Haverford Township Board
of Commissioners (Township) from decisions of the
Court of Common Pleas of Delaware County in consoli-
dated actions concerning Mid-County's proposed construc-
tion of three high-rise apartment buildings.

Mid-County owns a 17.5 acre tract of land in the
Township on which it desired to construct its apartment

buildings. To further its plans it had requested the Township to create a new zoning classification which would permit high-rise construction and to rezone Mid-County's land to the requested classification. On December 14, 1970 the Township adopted Ordinance No. 1403 creating the classification of HRA, High-Rise Apartment and Ordinance No. 1404 rezoning Mid-County's tract from AA Residential to HRA, High-Rise Apartment. Thereafter, on April 27, 1972, Mid-County filed sketch and site plans with the Township Secretary and Township Building Inspector for approval, and these provided for three ten-story apartment buildings. The Township took no action with regard to the submitted plans other than to hold a public hearing on October 10, 1972 to consider rezoning Mid-County's tract of land from the HRA classification either back to AA, Residential or to AO, Apartment Office, and on November 13, 1972 Ordinance No. 1489 was adopted by the Township changing Mid-County's property back to an AA classification. Mid-County then filed a timely appeal to the court below challenging the validity of Ordinance No. 1489.

Prior to the lower court's disposition of the zoning appeal, Mid-County had filed an application with the Township Building Inspector for a building permit to construct the three high-rise apartments. The building inspector denied the application on February 13, 1975, ruling that the Haverford Township Zoning Ordinance no longer permitted such high-rise construction on Mid-County's tract. Then Mid-County filed an action in mandamus in the Delaware County Court of Common Pleas to compel the issuance of the building permits and requested that its sketch and site plans be approved as an application for preliminary subdivision approval under Section 508 of the Pennsylvania Municipalities Planning Code, 53 P. S. §10508[1] (MPC).

---

1.  Act of July 31, 1968, P. L. 805, *as amended.*

Both the zoning appeal and the action in mandamus were consolidated below, and the lower court on November 14, 1974 upheld the rezoning of the tract in question back to AA Residential. It ruled, however, that the sketch and site plans must be deemed approved under Section 508 of the MPC, provided that Mid-County must still fulfill the Township requirements for approval of preliminary and final plans before the building permits would be issued. These appeals followed. In No. 1614 C. D. 1974 Mid-County appeals from the upholding of Ordinance No. 1489 which rezoned its tract back to AA Residential. In No. 1581 C. D. 1974 the Township appeals from the order directing the Township to approve Mid-County's sketch and site plans. The appeals were consolidated for argument before this Court but we will discuss and dispose of them individually.

## No. 1614 C. D. 1974

This is the appeal of Mid-County from the upholding of the second rezoning; i.e. from HRA, High-Rise Apartment back to AA Residential. Mid-County argues for various reasons that Ordinance No. 1489 is null and void. At oral argument Mid-County for the first time asserted that this enactment of the ordinance constituted illegal special legislation and should be declared void under the Supreme Court's decision in *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514 (1965). The argument, however, having not been raised in the court below, cannot now be considered by this Court on appeal. Mid-County, however, also raised the argument that it had not received proper notice of the public hearings held on the proposal, which of course, we may consider on appeal.

The Township zoning ordinance apparently requires the mailing of notice of such public hearing to parties of interest, while Section 609 of the MPC, 53 P. S. §10609 requires publication of notice to the public at large. How-

ever, Section 610 of the MPC, 53 P. S. §10610 requires public notice of proposed ordinances to include a summary of the proposal "and a reference to a place within the municipality where copies of the proposed ordinance may be examined." Mid-County argues that the Township failed to adhere to these requirements.

Notice provisions contained in legislation regulating zoning enactments mandatorily obligate the governing body to comply with the requirements of the provisions so that all parties concerned are properly informed of the proposed action and have time to prepare themselves to represent their particular interests at the hearing. A township which fails to meet notice requirements risks having zoning enactments declared null and void. *Cf. Cameron v. Greensburg*, 3 Pa. Commonwealth Ct. 209, 281 A.2d 271 (1971). Here, however, the lower court, in its findings of fact, found that Mid-County "received notice of the zoning hearing." Our review of the record reveals that, although contradictory evidence was presented, a finding can be supported that the Township satisfied the requirements of its own notice legislation, which merely required the mailing of notice to the parties of interest. Moreover, a Mid-County representative admittedly attended the hearing, although he states that this was a routine practice for him. The requirements of the MPC, of course, are more particular, with Section 610 requiring that the Township provide public notice of proposed zoning changes in which is plainly stated the location where interested persons can examine the full text or an actual copy of the zoning *proposal*. Here the Township's notice referred interested persons to a location where a copy of the *petition* for zoning change would be examined. The petition, submitted to the Township by David H. Hall, one of the Township Commissioners, had requested that the Mid-County tract be rezoned from HRA, High-Rise Apartment Residential to either AA, Residential or AO, Apartment Office, and it was certainly

not a statement of the actual proposal in full. We fail to see, however, how Mid-County has suffered any injury from whatever technical error there may have been. In fact, its representative at the hearing did not raise any objection to the entire proceeding and the record fails to show how Mid-County has been harmed in any way. Mid-County, therefore, is not in a position to attack the action of the Township on this technical basis even though, in its opinion, the Township's motives for rezoning the property may be suspect. *Northampton Residents Association v. Northampton Township Board of Supervisors*, 14 Pa. Commonwealth Ct. 515, 322 A.2d 787 (1974). We, therefore, find no fatal flaw in the notice procedures utilized by the Township with respect to this appellant and must affirm the court below.

## No. 1581 C. D. 1974

This is the Township's appeal from the order directing it to approve Mid-County's sketch and site plans. Under Section 503 of the MPC, 53 P. S. §10503 subdivision, and land development ordinances of local governmental units—

"may include, but need not be limited to: (1) Provisions for the submittal and processing of plats, and specifications for such plats, including provisions for preliminary and final approval. . . ."

Under Section 508 of the MPC, 53 P. S. §10508 all applications for approval of a plat, whether preliminary or final, are to be acted upon by the governing body and its decision is to be communicated to the applicant "not later than ninety days after such application is filed." Failure to render a decision and communicate it to the applicant within the ninety days "shall be deemed an approval of the application in terms as presented. . . ."

Here the Township argues that the submission of sketch and site plans, the first step in the Township's three-step procedure for approval of development plans,

does not constitute an application for preliminary approval under the MPC and is thus not subject to the ninety-day provision or other provisions of the MPC. The Township's three-step procedure for approval of planned development projects first requires a submission and approval of a "Sketch Plan" then a "Preliminary Plan" and lastly a "Final Plan." Unquestionably Mid-County applied for approval of its "Sketch and Site Plans" for the three proposed high-rise apartment buildings on April 27, 1972. Receipt of these plans was acknowledged by the Township on that date. The Township, however, took no action, either to approve or to deny approval of these plans allegedly because an existing restriction on sewer connections would have precluded the construction described. When, in spite of the inaction of the Township, Mid-County applied for building permits and petitioned the court below in mandamus to compel issuance thereof, the court below ruled that, regardless of the reason for the lack of Township action, the Sketch Plan requirement of the Township ordinance must be deemed as an application for approval of a plat within the contemplation of Section 508 of the MPC and was, therefore, subject to the ninety-day provision requiring a Township decision. Clearly the lower court visualized the Township's procedures as including a two-step preliminary approval of proposed development under the MPC rather than only a one-step preliminary approval before final approval of the plan could be rendered.[2]

---

2. Although Sections 501 et seq. of the MPC, 53 P. S. §10501, et seq. appear to contemplate a two-step process for approval of plats with respect to subdivision and land development, as we read Section 503, it arguably does not limit the Township to only two steps in the process of granting preliminary and final approval as do Sections 701 et seq. of the MPC, 53 P. S. §10701 et seq. with respect to planned residential development. *Abel v. Township of Middletown*, 7 Pa. Commonwealth Ct. 6, 297 A.2d 525 (1972). In any event although Mid-County now argues that the Abel reason-

The Township argues that the plans as submitted by Mid-County were not a formal application for approval and were not intended for serious consideration by the Township because (1) they did not meet the requirements of the ordinance for sketch plans, (2) Mid-County made no inquiries as to the status of the plans once it was informed that the decision would be held in abeyance because of the sewer ban, and (3) nearly two years elapsed before Mid-County took action against the Township to compel the issuance of building permits in accordance with the plans. This argument, however, merely diverts attention from the real issue, which is: Does the MPC empower a local governing body to establish procedures for submission of subdivision and land development plans prior to preliminary and final applications for development without affording the protections provided in the MPC. We believe that it does not.

Section 508 was enacted to remedy the losses occasioned by the indecision, vague recommendations, and protracted deliberations of local governing bodies and to eliminate deliberate or negligent inaction on the part of governing officials. See *Township of Montgomery v. Market Center Realty Co.*, 12 Pa. Commonwealth Ct. 449, 317 A.2d 317 (1974); *Gettys v. Dillsburg Borough Council*, 7 Pa. Commonwealth Ct. 519, 300 A.2d 805 (1973). It is clear, therefore, that the General Assembly did not contemplate empowering the local governing bodies to adopt procedures which should subvert these remedial provisions. Judge CATANIA of the court below correctly ruled that because ninety days had elapsed without Township action upon Mid-County's sketch plans application,

---

ing applies to general subdivision and land development under Section 501 et seq. it has not appealed from the lower court decision which appears to sanction the three-step process. We, therefore, do not reach the issue of whether or not the three-step process is permitted under Section 501 et seq. of the MPC.

the plans must be deemed approved under Section 508 of the MPC. It follows that he also correctly concluded that Mid-County's proposal could not be subject to any zoning changes after the ninety-day period because Section 508(4) of the MPC, 53 P. S. §10508(4), precludes for a three-year period the application of new zoning to land upon which development plans have already been submitted and approved. Consequently, the validity of the zoning enactment which we upheld in No. 1614 C. D. 1974 cannot affect Mid-County's right to proceed for further approval of development under the Township's three-step approval ordinance, and the three-year period specified in Section 508(4) of the MPC shall begin to run when the Township issues written approval of Mid-County's Sketch and Site Plans.

The order of the lower court is, therefore, affirmed with respect to Mid-County's action in mandamus.

---

CONCURRING OPINION BY JUDGE KRAMER:

I concur in the opinion of the majority, but I feel compelled to emphasize that *Abel v. Township of Middletown*, 7 Pa. Commonwealth Ct. 6, 297 A. 2d 525 (1972) is still applicable to issues arising under Article V of the MPC.[1] As I understand the majority opinion, no holding has been made in this case on whether municipalities, under Article V, may impose a two-stage "preliminary" approval process upon developers proceeding under a subdivision and land development ordinance, and, with this observation in mind, I concur.

---

1. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10501 et seq.