In Re: Appeal of the Emmanuel Baptist Church from the Decision of the Zoning Hearing Board of North Cornwall Township in Refusing the Application of the Emmanuel Baptist Church for a Special Exception. North Cornwall Township, Appellant.

428

Argued September 11, 1975, before President Judge Bowman and Judges Kramer and Mencer, sitting as a panel of three. Reargued June 8, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer and Blatt. Judges Kramer and Rogers did not participate in the reargument.

*Robert C. Rowe*, with him *Calvin D. Spitler*, and *Spitler, Rowe & Kilgore*, for appellant.

*Robert W. Feeman*, with him *Egli, Reilly, Wolfson and Feeman*, for appellee.

Opinion by Judge Blatt, September 17, 1976:

In August of 1974 the Emmanuel Baptist Church (Church) applied to the Zoning Hearing Board (Board) of North Cornwall Township (Township) for a building permit to construct church facilities as a special exception on a 6 or 7 acre tract of land in a zoning district restricted to manufacturing uses. A hearing on the Church's request was held before the three members of the Board on August 29, 1974. Thereafter the Board denied the request, finding that it had no authority to authorize church uses in manufac-

turing areas. The decision of the Board, however, was not made at a formal meeting, but was made by way of telephone conversations participated in by members of the Board, following which, on October 14, 1974, a written denial of the request was forwarded to the appellee. This was received on October 16, 1974. In its appeal to the Court of Common Pleas of Lebanon County, the Church argued among other things, that the Board violated the so-called Sunshine Law[1] (Act) by failing to render its decision during a public meeting. Without ruling upon that issue, but after examining the applicable provisions of the zoning ordinance, the court below concluded that the Township ordinance authorized this church use as a special exception in the district, and, therefore, ordered the Board to issue the appropriate building permit to the Church. North Cornwall Township has now appealed from that decision.

When a court considers a case upon facts as stipulated by the parties before it, as was done here by the court below, the court invokes its jurisdiction to decide the case de novo on the merits. *See Cresko Zoning Case,* 400 Pa. 467, 162 A.2d 219 (1960) ; *Hauck v. Wilkes-Barre City Zoning Board of Adjustment,* 2 Pa. Commonwealth Ct. 76, 276 A.2d 576 (1971). Our scope of review, therefore, is limited to a determination as to whether or not the lower court committed an error of law or abused its discretion. *Borough of Baldwin v. Bench,* 11 Pa. Commonwealth Ct. 410, 315 A.2d 911 (1974).

We believe, after examining the lower court's analysis of the applicable provisions of the zoning ordinance, that it erred in concluding that the Board should have granted a special exception for this church use of the property in question.

---

[1] Act of July 19, 1974, P.L. 486, 65 P.S. §261 et seq.

The tract here involved is largely undeveloped farm land with a farm house, a barn, and other small buildings. It exists as a nonconforming agricultural use under the Township's zoning ordinance. The Church proposes to use the house as a parsonage and to construct a church building and other facilities on the undeveloped portion of the land. Under the ordinance a nonconforming use of a structure and premises may be changed to another nonconforming use as a special exception provided that the proposed use is equally as appropriate to the district or more appropriate than the existing use.[2] It is the express intent of the ordinance, however, to insure "that non-conformities *shall not be used as grounds for adding other structures* or uses prohibited elsewhere in the same district." (Emphasis added.) Section 14.1 of the North Cornwall Township Zoning Ordinance. In our view, given the clear intent of the ordinance, the added construction of church facilities on the undeveloped portion of the tract in question would be less appropriate to the manufacturing uses for which this district is now zoned than is the current nonconforming agricultural use for the simple reason that the land could be encouraged more readily to conform to its intended manufacturing uses if it were to remain undeveloped than if additional structures were to be added to the property. Such an application of the Township's spe-

---

[2] "Any non-conforming use of a structure, or structure and premises, may as a special exception be changed to another non-conforming use provided that the Zoning Hearing Board, either by general rule or by making findings in the specific case, shall find that the proposed use is equally appropriate or more appropriate to the district than the existing non-conforming use. In permitting such change, the Zoning Hearing Board may require appropriate conditions and safeguards in accord with the provisions of this ordinance." Section 14.5(c) of the North Cornwall Township Zoning Ordinance.

cial exception provision is in complete harmony with the intent of the ordinance and the general principles applicable to nonconforming uses, for it must be remembered that "the law encourages rapid universal conformity with zoning regulations." *DiNardo v. City of Pittsburgh,* 15 Pa. Commonwealth Ct. 279, 287, 325 A.2d 654, 659 (1974).

We are, therefore, confronted with the validity of the decision-making process of the Board. Framing the issue narrowly, we ask: Is a zoning hearing board one of the agencies envisioned by the Sunshine Law as being required to render its decisions on zoning applications at open meetings? On at least two occasions our courts of common pleas have confronted this issue and have reached opposite results. *Compare Allwein v. Zoning Hearing Board of North Cornwall Township,* 15 Lebanon 179 (1975) with *Enck v. Lititz Borough,* 64 Lanc. Law Review 465 (1975). Those courts have ably discussed the application of the Sunshine Law to such proceedings, but the contradictory results reached provide ample proof that we are dealing here with a statute which fails to establish precise guidelines for operational compliance.

Section 2 of the Act, 65 P.S. §262 directs as follows:

"The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting."

Section 1 of the Act, 65 P.S. §261 defines the terms "agency" and "formal action":

" 'Agency' means any branch, department, board, authority or commission of the Commonwealth of Pennsylvania, any political subdivision of the Commonwealth, or any State, municipal, township or school authority, school board, school governing body, commission, the board of trustees of all State-aided col-

leges and universities, the board of trustees of all State-owned and State-related colleges and universities and all community colleges, or similar organization created by or pursuant to a statute which declares in substance that the organization performs or has for its purpose the performance of an essential governmental function: Provided, That the term 'agency' shall include the General Assembly, or any State department, board, authority or commission to include the governor's cabinet when meeting on official policy making business.

" 'Formal action' means the taking of any vote on any resolution, rule, order, motion, regulation or ordinance or the setting of any official policy. Meetings, pre-trial conferences, hearings, and formal action by the judiciary or judicial branch shall not be subject to the provisions of this act."

The statute would appear to have an all-encompassing effect, excepting only actions by "the judiciary or judicial branch." The Township argues, however, that actions of a zoning hearing board taken while acting in its quasi judicial capacity fall within this exclusion. We disagree.

Since 1957, Pennsylvania has had an open meeting law which compels organizations created pursuant to statute and performing essential governmental functions to render their decisions at public meetings.[3] The current Sunshine Law expands upon this law and is in keeping with the trend of legislation throughout most of these United States. Support for such legislation is obviously widely accepted and easily justified. As one commentator has stated:

"The arguments for open meetings rely on the premise that public knowledge of governmental action is essential to the democratic process. Open meeting

---

[3] Act of June 21, 1957, P.L. 392, *as amended*, 65 P.S. §251 et seq.

legislation is helpful to both the citizens and the public officials. As for the public at large, open meeting requirements curtail governmental officials' misbehavior, provide for a more educated public, make for more accurate reporting of governmental activities by the press, and allow decisions which result in the expenditure of public funds to be made openly. Public officials benefit because open meetings provide them with accurate information concerning the issues ininvolved, better enable them to gauge public reaction, and foster public faith in government.'' Kalil, *Florida Sunshine Law,* 49 Fla. B. J. 72, 72 (February 1975).

Commentators have not, however, overlooked the need for certain governmental decisions to be made at closed meetings. It is suggested by some commentators that either the legislatures or the courts carve out exceptions to provide for the exclusion of proceedings related to personnel management, labor negotiations, official investigations, and proceedings relating to the acquisition of real property, among others.[4] Obviously the Pennsylvania Legislature has not overlooked some of these problems. See Section 3 of the Act, 65 P.S. §263.[5] There does not, however, appear to be general encouragement for the legislature or for

---

[4] See Wickham, *Tennessee's Sunshine Law: A Need For Limited Shade And Clearer Focus,* 42 Tenn. L. Rev. 557 (1975) ; Little and Tompkins, *Open Government Laws: An Insider's View,* 53 N.C. L. Rev. 451 (1975) ; Wickham, *Let the Sunshine In,* 68 N.W. L. Rev. 480 (1973) Comment, *Open Meeting Laws: An Analysis and a Proposal,* 45 Miss. C. J. 1151 (1974).

[5] Section 3 reads as follows :

"No public meeting of any agency shall be adjourned, begun, recessed or interrupted in any way for the purpose of an executive session except as hereinafter provided. An executive session may be held during the course of a properly constituted public meeting upon notification to the public present by the presiding officer that for a period not to exceed thirty minutes the meeting will be in recess for the purpose of :

the courts to exclude the quasi judicial actions of governmental agencies from such coverage. The issue was squarely confronted in *Canney v. Board of Public Instruction of Alachua County*, 278 So. 2d 260 (1973), where the Florida Supreme Court in applying that state's sunshine law concluded that a governmental body when acting in its quasi judicial capacity cannot be excluded from coverage. The Florida statute was similar to the one here involved and the court's analysis is persuasive:

"The characterization of a decisional-making process by a School Board as 'quasi-judicial' does not make the body into a judicial body. A county school board should not be authorized to avoid the Government in the Sunshine Law by making its own determination that an act is quasi-judicial. Secret meetings would be prevalent. The correct understanding of the terminology 'quasi-judicial' means only that the School Board is acting under certain constitutional strictures which have been enforced upon all administrative boards and not that the School Board has become a part of the judicial branch. To hold otherwise would be to combine the legislative and judicial functions in one body clearly contrary to the separation of powers doctrine. *The judiciary should not encroach upon the Legislature's right to require that the activities of the School Board be conducted in the 'sunshine.'*

"Various boards and agencies have obviously attempted to read exceptions into the Government in the Sunshine Law which do not exist. Even though their intentions may be sincere, such boards and agencies should not be allowed to circumvent the plain pro-

"(1) Considering dismissal or disciplining of, or hearing complaints or charges brought against a public elected officer, employee, or other public agent unless such person requests a public hearing.

"(2) Considering actions of the deliberating body with respect to labor negotiations."

visions of the statute. The benefit to the public far outweighs the inconvenience of the board or agency. If the board or agency feels aggrieved, then the remedy lies in the halls of the Legislature and not in efforts to circumvent the plain provisions of the statute by devious ways in the hope that the judiciary will read some exception into the law." 278 So. 2d at 263-264. (Emphasis added.)

While in the case at hand we are not dealing with a school board but a zoning hearing board, that board is a creature of the legislature[6] and is subject to all legislative controls and directives, as is a school board. By our reading of the Sunshine Law, we cannot fairly say that the legislature has demonstrated any intent to exclude this body from the Act's coverage, and, when we consider that zoning board members, as appointed rather than elected officials, are less subject to public accountability than are elected school board members, the rationale for requiring meetings to be public at which decisions are made becomes more persuasive. As this Court said in applying the 1957 open meeting law:

"Unlike other public bodies, the members of 'authorities' are appointed and not elected and are not *directly* responsible for their actions to the electorate. If the elected members of public bodies are to be subjected to public disclosure of their actions, how much more important that the appointed members of public bodies be required to make such disclosure." *Erie Municipal Airport Authority v. Automation Devices, Inc.;* 15 Pa. Commonwealth Ct. 273, 276, 325 A.2d 501, 502 (1974) citing *Bogert v. Allentown Housing Authority,* 426 Pa. 151, 158-159, 231 A.2d 147, 151 (1967). (Emphasis in original.)

---

[6] See Section 901 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10901.

Such is certainly the case here for as President Judge Gates observed in *Allwein, supra,* at 181: "There is great potential for zoning officials to practice favoritism and discrimination in granting or refusing variances and exceptions." While there does not appear to have been any impropriety in the actions of this Board we have no way of knowing whether or not all three Board members participated in the decision, nor, what their individual decisions were. Surely the Sunshine Law was meant to afford some accountability, and we believe that the members of the Board should have rendered their decision at an open meeting, as the Sunshine Law requires.

Here the Board, having failed to render its decision on the application of the Church for a special exception at a public meeting, which decision provisions of the Sunshine Law render invalid, we must next consider whether or not Section 908(9) of the MPC, 53 P.S. §10908(9) requires that a decision must be deemed to have been rendered in favor of the applicant. That section, at the time here concerned, read in pertinent part:

"(9) *The board or the hearing officer, as the case may be, shall render a written decision or, when no decision is called for, make written findings on the application within forty-five days after the last hearing before the board or hearing officer.* Except in home rule municipalities, where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefor. Conclusions based on any provisions of this act or of any ordinance, rule or regulation shall contain a reference to the provision relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found. If the hearing is conducted by a hearing officer, and there has been no stipulation that his decision or find-

ings are final, the board shall make his report and recommendations available to the parties and the parties shall be entitled to make written representations thereon to the board prior to final decision or entry of findings, and the board's decision shall be entered no later than forty-five days after the decision of the hearing officer. *Where the board has power to render a decision and the board or the hearing officer, as the case may be, fails to render the same within the period required by this subsection, the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing to an extension of time.* Nothing in this subsection shall prejudice the right of any party opposing the application to urge that such decision is erroneous.'' (Emphasis added.)

Judge Rogers considered this problem in *Enck v. Anderson*, 25 Pa. Commonwealth Ct. 318, 360 A.2d 802 (1976), and observed that ''[t]he Sunshine Law declares that 'no formal action shall be valid unless such formal action is taken during a public meeting'; it does not declare that such action so taken is no action at all.'' 25 Pa. Commonwealth Ct. at 321, 322, 360 A.2d at 804. The ''deemed approved'' rule as set forth above is designed we believe to assure applicants of timely decisions on their zoning applications, and zoning boards under this rule can no longer effectively frustrate or prohibit lawful land uses by refusing to act on zoning applications. But, where some action has been taken within 45 days but rendered invalid only because of a board's failure to adhere to the Sunshine Law, the purpose of the 45-day rule is not furthered by granting the application without any consideration as to the validity of the use and thus penalizing the Township and jeopardizing its land use scheme. The Township has acted in good faith, if mistakenly, and further penalization is not required.

The order of the court of common pleas is, therefore, reversed and the action is hereby remanded to the court so that it in turn may remand it to the Board where valid action can then be taken at an open meeting held pursuant to the provisions of the Sunshine Law, such meeting to be held within thirty days from the effective date of this order.