In Re: Appeal by Mark-Garner Associates, Inc. From the Decision of Bensalem Township Zoning Hearing Board Sustaining Decision of Zoning Officer of Bensalem Township. (Two cases) Bensalem Township, Appellant.

Argued October 4, 1979, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Leslyie G. Dias,* with him *Henry F. Huhn,* for appellant.

*Carl K. Zucker,* with him *Edwin N. Popkin, Robert W. Freedman* and *Emil F. Toften,* for appellee.

OPINION BY JUDGE MENCER, April 8, 1980:

This zoning appeal is from an order of the Court of Common Pleas of Bucks County which reversed a decision of the Bensalem Township Zoning Hearing Board and directed the issuance of building permits for units in a 557-unit condominium project on 50 acres of land.

The facts are not in dispute.

With the land originally zoned R-4, permitting the proposed condominium residential development with a density of 12 units per acre, the landowner complied with all township regulations so that its final plan was approved by the township board of supervisors on May 16, 1973 and subsequently recorded, along with the filing of a declaration of condominium.

After commencing construction in the spring of 1973, the landowner sold the first unit on May 4, 1975 and since then has built and sold 116 units, with 15 more under construction.

The landowner has expended $3 million in the construction and in the substantially complete installation of service roads and underground utilities, including storm sewers, sanitary sewers, and water lines; underground electrical and telephone lines are now in 80 percent of the tract.

Shortly after the final plan approval, on June 20, 1973, the township amended the R-4 provisions to reduce allowable density from 12 to 10 units per acre. The landowner's request for additional building permits on September 24, 1976 was rejected by the township on the basis of that 1973 amendment, and, shortly thereafter, in October of 1976, the township further reduced the allowable residential density from 10 to 4 units per acre.

The township zoning hearing board rejected the landowner's appeal on the basis that Section 508(4) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10508(4), governed the matter and, as interpreted by the board, permitted the lowered density requirement to govern the remainder of the project because neither the completion of the project nor the request for the remaining unit permits had come about within the three-year period provided in that MPC section.

The court below reversed the board by expressly interpreting Section 508(4) to permit the completion of the project after the three-year deadline where the developer has proceeded in good faith to take substantial steps toward completion within the three-year period.

Recently, in another case, we concluded that we could not agree with that interpretation. In *Appeal of Central Penn National Bank,* 47 Pa. Commonwealth Ct. 334, 408 A.2d 550 (1979), a similar case involving the same township and the same zoning amendments, we were required to reject that interpretation as a matter of law, pointing out that, after the expiration of the three-year period of Section 508(4), "the landowner stands in the same position as any other landowner vis-a-vis the existing zoning requirements." 47 Pa. Commonwealth Ct. at 337, 408 A.2d at 551. *See In Re: Application of BCL, Inc.,* 36 Pa. Commonwealth Ct. 96, 387 A.2d 970 (1978); *Mid-County Manor, Inc. v. Haverford Township Board of Commissioners,* 22 Pa. Commonwealth Ct. 149, 348 A.2d 472 (1975). In *Central Penn National Bank, supra,* 47 Pa. Commonwealth Ct. at 337, 408 A.2d at 551, in view of an alternative request by the landowner for a variance, we remanded the matter to the court below to determine whether the landowner has a variance entitlement " 'where such a landowner has so substantially improved the land that . . . the intervening zoning change if applied creates a forfeiture in that landowner.' "

The present case is in a different procedural posture. Here the landowner made no alternative request for a variance. As the township emphasizes, the landowner did not seek or rely upon any interpretation of Section 508(4) in its favor; the notice of appeal specifically averred that Section 508(4) "is not applicable" and that application of it would violate landowner's constitutional rights. Landowner relied essentially upon a vested interest theory instead of the favorable interpretation of Section 508(4) accorded by the lower court and now rejected by us. In its brief, the township itself has explicitly acknowledged those

issues to be before us by asserting, in the following terms, two of the questions involved in this case:

IV. Does final plan approval give a landowner a nonconforming use or vested right to develop in violation of the applicable ordinances?

V. Does Section 508(4) of the Municipalities Planning Code violate the landowner's constitutional rights?

We approach these issues mindful that, as we stated in *Central Penn National Bank,* with the expiration of the Section 508(4) three-year period, landowner stands in the same position as any other landowner as to the now-existing zoning requirements.

Initially, we may note that this landowner, with respect to construction approval for the unbuilt units, is not in the same position as if it had already received, and made substantial expenditures in reliance upon, specific unit building permits for those remaining units; thus the landowner does not have the benefit of the vested building permit doctrine originally stated in the leading case of *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195 (1930) and often applied to the conventional situation of separate dwellings on individual lots.

In *York Township Zoning Board of Adjustment v. Brown,* 407 Pa. 649, 182 A.2d 706 (1962), and *Friendship Builders, Inc. v. West Brandywine Township Zoning Board,* 1 Pa. Commonwealth Ct. 25, 271 A.2d 511 (1970), the Pennsylvania Supreme Court and this court, respectively, held that mere plan approval under subdivision regulations does not establish a vested right or nonconforming use.

The present case is controlled by *Dunlap Appeal,* 370 Pa. 31, 87 A.2d 299 (1952), in which the Supreme Court held that "a vested right to build *in futuro* a structure which violates a zoning ordinance can only

be acquired by first securing a permit and thereafter expending substantial sums in reliance thereon." 370 Pa. at 33, 87 A.2d at 301.

In the instant case, the landowner has not alleged that it has made any expenditures in reliance upon permits issued, since this case involved the rejection of an application for permits. Therefore, since the landowner was not acting in reliance upon permits issued, it has no vested right to complete its project in violation of the applicable ordinances. *Dunlap Appeal, supra.*

Worthy of note is the case of *Kromez, Inc. v. Upper Southampton Township Zoning Hearing Board,* 28 Bucks 193 (1976), which involved an uncompleted fourth section of a four-section garden-apartment project and the common improvements provided for all four sections. There the court found no vested right and no confiscation, stating:

> We have not seen evidence that the road network, utilities or other facilities would have been constructed or furnished by appellant in any different fashion, had development followed some different pattern or sequence. Nor is there evidence to show that a reduction in allowable density in Section Four from 14 units per acre to 8.5 units per acre would materially alter the usefulness of facilities furnished by appellant at the outset of development for ultimate use within that section.
>
> Our conclusion can only be that appellant has not shown proof of circumstances which, absent the issuance of a building permit, would support a finding that it had acquired a vested right to proceed with development in a manner contrary to that now allowed under the lawfully revised zoning ordinance.

*Id.* at 197-98.

.If the landowner here had any "vested rights," they were limited to the three-year time limit of Section 508(4).

As to whether Section 508(4) violates the landowner's constitutional rights, it should be noted that this section does not require the completion of the development within three years. All Section 508(4) provides in this regard is that, if any of the governing ordinances are changed, they can only be applied after the three-year period. It is significant that the landowner has raised no constitutional challenge to the ordinance in question.

Since we are called upon to consider a constitutional challenge to a legislative enactment, there are certain guidelines that must govern our review.

We note, at the outset, that it is a fundamental principle in our conception of judicial authority that courts are not to inquire into the wisdom, reason or expediency behind a legislative enactment. *Commonwealth v. Moir*, 199 Pa. 534, 49 A. 351 (1901). Nor are the motives of the legislators in passing the act open to judicial consideration. *Commonwealth v. Keary*, 198 Pa. 500, 48 A. 472 (1901). Our inquiry in such cases can only be directed to the manner in which the legislature effectuates its will, to insure that the enactment does not transgress some specific constitutional prohibition.

The standards to be applied in making this determination are equally well settled. It is axiomatic that a legislative enactment is presumed to be constitutional.

> There is, of course, a strong presumption in favor of the constitutionality of statutes—a presumption which reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of government. (Footnotes omitted.)

*School Districts of Deer Lakes and Allegheny Valley
v. Kane,* 463 Pa. 554, 562, 345 A.2d 658, 662 (1975).
Accordingly, the burden rests on those alleging uncon-
stitutionality to show that an enactment clearly, pal-
pably and plainly violates the constitution. *Tosto v.
Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1,
331 A.2d 198 (1975).

Our analysis of the landowner's arguments satis-
fies us that it has not met its burden in the instant
case. We simply cannot perceive, in this case, that, in
the absence of permits and without a vested right to
the issuance of additional permits, the landowner can
successfully contend that its constitutional rights are
abrogated by the time limitation contained in Section
508(4).

The landowner has raised the question of board
compliance with the 45-day time limit in Section 908
(9) of the MPC, 53 P.S. §10908(9), but we find no
merit in the landowner's contentions on this matter.
However, assuming arguendo that Section 908(9) has
been violated by the board, since it is a body that needs
to be independent of the township, *Horn v. Township
of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975), it could
be argued that equitably the township should not be
prejudiced by the board's failure to comply with Sec-
tion 908(9). *Cf. Appeal of Emmanuel Baptist Church,*
26 Pa. Commonwealth Ct. 427, 364 A.2d 536 (1976) (a
decision of a zoning board not rendered during a pub-
lic meeting and thus invalid under the Act of July 19,
1974, P.L. 486, *as amended* [Sunshine Law], cannot
be considered to be no decision for the purpose of in-
voking the provisions of the MPC which effect an ap-
proval of a petition where no action is taken within the
prescribed time period).

We will affirm the decision of the court below on
the issue of who bears the cost of the original tran-
script of the record. We have previously read Section

1008(2) of the MPC, 53 P.S. §11008(2), to require that the township board must provide the original transcript of record, *In Re: Appeal of Martin,* 33 Pa. Commonwealth Ct. 303, 381 A.2d 1321 (1978), reaching the same conclusion that the court below did in its interpretation of Section 908(7) of the MPC, 53 P.S. §10908(7). Thus the litigant may be charged only for the copy obtained by it and not for the original which is the responsibility of the municipality. The township solicitor errs in threatening that, if we affirm the lower court on this point, the board hereafter can simply dispense with the making of a verbatim transcript, claiming that there "is no requirement in the law" for that; counsel should reread the very section argued before the court below, Section 908(7), which plainly requires the board to "keep a stenographic record."

We will affirm the order of the court below as to the transcript and will otherwise reverse.

Order affirmed in part and reversed in part.

### ORDER

AND Now, this 8th day of April, 1980, the order of the Court of Common Pleas of Bucks County, dated May 18, 1978, is hereby affirmed with respect to the direction to refund to Mark-Garner Associates, Inc., any sums charged by Bensalem Township for a copy of the transcript of record in excess of the actual cost of that copy, and the same order is otherwise reversed.

President Judge BOWMAN and Judge DiSALLE did not participate in the decision in this case.

---

### DISSENTING OPINION BY JUDGE CRAIG:

I must respectfully dissent because the majority decision denies the existence of a vested right where

a developer has lawfully built $3 million worth of improvements in reliance upon the official land development approval of the condominium project granted by the township. The majority decision seems to put form above substance in insisting that there must be "specific unit building permits" also.

As is pointed out below, the result of the township's later action and our majority decision will be to more than quadruple the improvement cost of each housing unit—an inexplicable contribution to today's grinding inflation of the price of a place to dwell.

The situation here is distinguishable from that in *York Township Zoning Board of Adjustment v. Brown,* 407 Pa. 649, 182 A.2d 706 (1962) and *Friendship Builders, Inc. v. West Brandywine Township Zoning Board,* 1 Pa. Commonwealth Ct. 25, 271 A.2d 511 (1970), which, as the majority opinion correctly states, held that mere plan approval under subdivision regulations does not establish a vested right or nonconforming use.

Much more than mere subdivision approval has occurred in this case. The laying out of lots is not involved here at all. The millions of dollars spent on construction has been under a *land development* approval.

A "land development," as defined under Section 107(11) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10107(11), includes "the *improvement* of *one* lot . . . for any purpose involving . . . the . . . allocation of land . . . for the purpose of . . . *condominiums.*" (Emphasis supplied.)

Although the condominium form of ownership is not itself a proper subject of zoning *prohibition, Kaufman & Broad, Inc. v. West Whiteland Supervisors,* 20 Pa. Commonwealth Ct. 116, 340 A.2d 909 (1975), con-

dominium projects are recognized as falling within land development ordinances under Article V of the MPC 53 P.S. §§10501-10515. The unified nature of the whole project is graphically illustrated by the fact that the approved plan shows no outlines of separate lots. In a practical sense, the original approval authorized the condominium project as proposed.

Also distinguishable is *Dunlap Appeal*, 370 Pa. 31, 87 A.2d 299 (1952) in which the Supreme Court held that "the mere laying of pipes and sewers" 16 years before enactment of an initial zoning ordinance did not bring the plan "so near completion that the lots ... constituted a nonconforming use *in existence* prior to the ordinance." 370 Pa. at 34, 87 A.2d at 301. (Emphasis in original.) In that case, because no zoning or subdivision regulations were in effect when the improvements were made, there had been no official cognizance or approval of the overall project, as there was here.

As the court below pointed out, with roads, storm sewers, sanitary sewers and water lines virtually completely installed, the total expenditure of $3 million means that the expenditure for common facilities has exceeded $5,000 per unit for each of the 557 units originally approved. Arithmetic indicates further that such expenditure, if it is allocated only among the 131 units now constructed, would climb to a figure of $22,-900 for each unit.

More closely than any decision available from our courts, the situation here appears to fit that in *Telimar Homes, Inc. v. Miller*, 14 App. Div. 2d 586, 218 N.Y.S. 2d 175 (1961) cited and quoted with approval in *Cheltenham Township Appeal*, 413 Pa. 379, 392-93, 196 A.2d 363, 369-70 (1964) as follows:

The concept that development of a large tract, even though by stages, may be considered

as a whole, if so planned, is illustrated in Telimar Homes, Inc. v. Miller, 14 App. Div. 2d 586, 218 N.Y.S. 2d 175 (1961). The builder there acquired land for residential development pursuant to a single overall plan for the entire tract. To facilitate financing, construction, and orderly development, it was divided into four sections. After approval of the first section, extensive planning and construction was undertaken. However, after approval of the second quarter, the ordinance was amended, and approval of sections three and four was refused. The court said (218 N.Y.S. 2d at 177):

'It is clear from this record that the water system, roads, drainage system, model house construction and advertising were laid out and designed for the benefit of all four sections developed as a single, overall tract; that they would have been laid out and treated on an entirely different basis if the development of each section were to be separate; and that, prior to the zoning amendment, substantial construction had been commenced and substantial expenditures had been made in partial development of sections three and four, as well as sections one and two. Hence, plaintiff acquired a vested right to a nonconforming use as to the entire tract. ... [Citing cases].'

I recognize that the precise holding of *Cheltenham Township Appeal* was that an integrated, comprehensive development of a large tract of land will be treated as a single undertaking so that objecting neighbors are required to appeal the initial building permit and not later ones. I also recognize that it is another matter to conclude, as did the New York court, that the lawful establishment of the infrastructure of community facilities for such a comprehensive devel-

opment gives rise to a vested property right sufficient to outweigh the municipality's public interest in amending its density regulations.

Clearly, the property right in such an investment can be considered to be vested as against public police power concerns only when its substantiality and its circumstances are such that the density reduction would have the effect of confiscating, or preventing the recovery of, all or most of the value of the common improvements which have been constructed and dedicated to the comprehensive project.

Our lower court decision in *Kromez, Inc. v. Upper Southampton Township Zoning Hearing Board,* 28 Bucks 193 (1976), cited by the majority, nevertheless soundly reflected the proposition that, if there is a taking of a substantial portion of the lawful investment in common facilities by a police power action not reasonably requiring such a taking without compensation, then the associated development right should be considered "vested" as against the regulatory impact.

Inasmuch as the Court of Common Pleas here expressly did not consider the constitutional question of whether there would be confiscation of the landowner's investment in the common improvements unless there is deemed to be a vested right to complete the development originally approved, which question was properly before it but did not require disposition in view of the conclusion then reached, we should remand the case to that court to make that determination, with the taking of additional testimony if necessary. It is very likely that the sheer cost, extent and designed allocation of the common improvements thus far made in contemplation of 557 units, as indicated above, could be so great as not to be substantially recoverable or useable in the face of the subsequent amendments.