William **GALLAGHER** and Christine Gallagher, his wife

v.

**CHESTNUTHILL TOWNSHIP,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 23, 2009.

Decided March 25, 2009.

Joseph P. McDonald, Jr., Stroudsburg, for appellant.

Aaron M. DeAngelo, Stroudsburg, for appellees.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Chestnuthill Township (Township) appeals from an order of the Court of Common Pleas of Monroe County (trial court) which denied Township's post-trial motion to vacate the trial court's December 13, 2007 verdict, wherein the trial court concluded that William Gallagher and Christine Gallagher (Gallagher) are entitled to a variance from the minimum size lot requirement in the R–1 zoning district. We reverse.

In September of 2005, Gallagher filed a complaint seeking a judgment declaring that Township does not have the power to revoke the 1977 approved and recorded final plan for Maltese Estates and that the one acre lots depicted on the final plan can be sold and conveyed as individual lots pursuant to the plan. Township filed an answer and new matter asserting that the required road and drainage improvements were never completed, that no certificate of completion was ever issued as was required by the plan and that Township was barred from recognizing the plan because its layout and design conflict with a later enacted subdivision and land development ordinance which requires two acre lots.

The trial court conducted a hearing and made the following determinations. The land at issue, known as Maltese Estates, is owned by Gallagher. Maltese Estates consists of 21 one acre lots. Approval for Maltese Estates was given by the Board of

Supervisors in 1978 and the plan was recorded. At the time the plan was approved, the Chestnut Township Subdivision and Land Development Ordinance or SALDO was in effect and such permitted one acre lots. In accordance with the plan, road and other improvements needed to be completed. The recorded plan further provided that no lots in the subdivision could be sold without first obtaining from the Board of Supervisors, a certificate of approval stating that all required improvements had been made.

An application to construct a road to provide access to the 21 lots was submitted to the Department of Transportation on April 12, 1978. Commencement of Maltese Road began and flagging of the roadway was completed on April 22, 1978. No other work was done on Maltese Road until 1980, when trees and brush were removed, swales were dug and drainage pipes were installed. Maltese Road has not been paved or completed in accordance with the ordinances that were in effect in 1978. In fact, the road base has not been maintained and is now overgrown with grass and trees.

Since 1990, the lots in Maltese Estates have been individually assessed and Gallagher has paid the tax due on the lots.

In 2000, Township's zoning ordinance was amended to require a two acre minimum in the R–1 district. Thereafter, in 2004, Gallagher contacted Township to determine whether the one acre lots in the Maltese Estates development remained valid. Township informed Gallagher that Maltese Estates is subject to the later enacted ordinances, including the two acre lot minimum. Gallagher then instituted the instant action, seeking an order from

the trial court that Township does not have the power to revoke the prior approved plan for Maltese Estates, which includes the one acre sized lots.

After a hearing, the trial court determined that the lots at issue shall be designated as non-conforming lots that Gallagher is entitled to a variance from the current two acre lot size requirement and that by assessing and collecting taxes on the individual lots since 1990, Township acquiesced to the non-conforming one acre lot sizes. The trial court further modified the prior approval of the road and drainage system of Maltese Estates to reflect that Gallagher must now comply with the standards set forth in the current ordinance, that Gallagher is required to post a bond with Township in an amount sufficient to cover the cost of the roadways and that Gallagher shall not sell any lots within Maltese Estates until the drainage system is in conformance with the current ordinance.

■ Township filed a motion for post-trial relief, arguing that the trial court erred in concluding that because Township received real estate tax payments from Gallagher for each lot in Maltese Estates that Township forfeited its right to require Gallagher to redesign the lots to comply with the current two acre minimum requirement. The trial court denied the post trial motion and this appeal followed, wherein Township challenges the trial court's determination that Gallagher need not conform to the present two acre lot size requirement.[1]

■ Initially, we address Township's argument that a developer's failure to take the necessary steps to substantially com-

---

1. This court's review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court committed an error of law or abuse of discretion. *Juniata Valley School District v. Wargo,* 797 A.2d 428 (Pa.Cmwlth.2002).

plete improvements required by a plan or to otherwise take steps to preserve the plan's validity beyond the time period set forth in Section 508(4) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508(4), which at the time of plan approval was three years, results in the application of the new updated land ordinance. Section 508(4) of the MPC provides [2]:

> (4) Changes in the ordinance shall affect plats as follows:
>
> (ii) When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the rights of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval. Where final approval is preceded by preliminary approval, the three year period shall be counted from the date of the preliminary approval. . . .

"We have interpreted this section simply to provide the landowner with a statutory right to develop his property according to a land development plan, irrespective of any intervening zoning regulation, for a period of three years after approval of the plan. . . . After the expiration of the three-year period, the landowner stands in the same position as any other owner seeking to develop his property in a manner the zoning regulations no longer permit." *In re Appeal of Sterners Mill Associates,* 59 Pa.Cmwlth. 458, 430 A.2d 371, 372 (1981).

Here, the trial court concluded with respect to the roads in Maltese Estates, that Gallagher was not entitled to the three year protection plan provided in Section 508(4) of the MPC, inasmuch as the required improvements were never completed within the required time period. As such, Gallagher was required to comply with the road requirements contained within the current ordinance. However, as to lot size, the trial court concluded that because the lots had been individually assessed since 1990, which was contrary to the provisions of Section 513(b) of the MPC, that Township acquiesced to the one acre non-conforming lots and thus, Gallagher did not need to comply with the current two acre lot requirement. Township argues that just as Gallagher was required to comply with the road requirements contained in the current ordinance, Gallagher should also be required to comply with the two acre lot size requirement, which is also contained in the current ordinance. We agree.

In *In re Appeal by Mark–Garner Associates, Inc.,* 50 Pa.Cmwlth. 354, 413 A.2d 1142 (1980), the municipality amended the zoning ordinance to restrict density after the landowner obtained final approval of a condominium development and had already built some units under the density ordinance in effect at the time the development was approved. Three years later, the owner wanted to build additional units which would violate the current density ordinance. This court observed that the landowner failed to obtain permits for future units to be built and thus, the landowner did not have a vested right to issuance of additional permits for development.

---

2. Section 508(4) of the MPC has since been amended to provide for a five, rather than a three year period.

In *York–Green Associates v. Board of Supervisors of South Hanover Township*, 87 Pa.Cmwlth. 93, 486 A.2d 561 (1985), this court upheld the denial of a developer's mandamus action and denied building permits where the township increased the minimum lot size subsequent to approval.

In this case, one of the conditions attached to the Maltese Estates plan was that no lots could be sold or buildings erected, without first obtaining from the Board of Supervisors a certificate of approval stating that all required improvements had been made. No certificate of approval was ever issued to Maltese Estates and having not completed the required improvements within three years, Gallagher is now subject to the present ordinance requirements, which necessitate a two acre lot minimum.

 Further, we disagree with the trial court's determination that Township has recognized the non-confirming lots as legally recorded lots. As stated in *Mark–Garner*, "mere plan approval under subdivision regulations does not establish a vested right or non-conforming use." *Id.* at 358, 413 A.2d 1142.

Moreover, even though Township received property tax payments on the individual lots, such does not amount to acquiescence of the non-conforming lots. As noted by the trial court, in 1978, the final plan for Maltese Estates was recorded with the Monroe County Recorder of Deeds. Thereafter, in 1990, although no lots had been sold, transferred, or improved, the 21 lots were individually assessed, contrary to the provisions set forth in Section 513(b) of the MPC, 53 P.S. § 10513(b), which provides:

(b) The recording of the plat shall not constitute grounds for assessment increases until such time as lots are sold or improvements are installed in the land included with the subject plat.

Here, the trial court determined that Township, as a taxing authority for township property taxes, has recognized the 21 parcels to be legally recorded lots and since the use of said lots was lawful and in existence prior to enactment of the current zoning ordinance, the lots satisfy the definition of non-conforming set forth in Section 107 of the MPC, 53 P.S. § 10107. Section 107 of the MPC provides:

(1) "Nonconforming use," a use, whether of land or of a structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawful, in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

We note that although 21 separate real estate tax bills were sent to Gallagher since 1990, which was contrary to the provisions in Section 10513(b) of the MPC, Gallagher never appealed the real estate tax assessments. Further, it is the County Board of Assessments, not Township, which determines the timing and scope of assessments. Merely because Township accepted tax revenue based on individual assessments of the lots by the County, which assessment Township did not impose, it does not follow that Township recognized the 21 one acre lots as legal nonconforming lots. Moreover, of the $86,461.88 paid by Gallagher in taxes, only $2,119.31 was received by Township, as the rest went to the school district and county. Such amount received by Township does not qualify as a substantial investment made in detrimental reliance upon a governmental unit or as prior plan approval.

 The trial court further determined that because Township benefited from the individually assessed lots, without com-

plaint, that Gallagher was entitled to a variance by estoppel to develop Maltese Estates with one acre lots. As to a variance by estoppel, the court in *Vaughn v. Zoning Hearing Board of Shaler*, 947 A.2d 218, 223 (Pa.Cmwlth.2008), stated the following:

> [T]he theories of variance by estoppel, vested rights and equitable estoppel are all well established and have been relied upon by zoning hearing boards and courts alike to permit a landowner to continue to use his property in violation of a zoning ordinance, where not to do so would create an unnecessary hardship by virtue of the landowner's detrimental reliance on municipal inaction, active acquiescence or misrepresentation.

Here, other than expending $3,979.22 for labor, lodging and related expenses toward partial construction of the required road improvements in 1980 and the payment of annual taxes, Gallagher has made no other effort or investment in Maltese Estates.

In accordance with *Vaughn*, to show that he was entitled to a variance by estoppel, Gallagher had to show that he had a vested right to develop the original plan based upon affirmative action by the municipality, that there was municipal inaction amounting to active acquiescence of an illegal use or that the municipality intentionally or negligently represented its position with reason to know that the landowner would rely on that position.

The only affirmative action by Township was to approve the Maltese Estates plan in 1978. No permits have been sought or issued since that time. In accordance with Section 508 of the MPC, 53 P.S. § 10508, which was in affect at the time of the plan approval, after approval for a development, a subsequent change in an ordinance will not affect a landowner who has, within three years, substantially completed the required improvements. Here, Gallagher has not completed the improvements as depicted in the final plat of Maltese Estates, nor has Gallagher sought any extensions of time to complete the required improvements. The protection period of Section 508(4), which shields a landowner from subsequently enacted ordinances, should not be extended from three years to twenty nine years.

As to whether there has been municipal inaction amounting to active acquiescence in an illegal use, Township argues that there is no illegal use of the land in question. In fact, there is no established principal use of the land at all. Township, by merely accepting taxes, which taxes were set by the County Board of Assessments, did not actively acquiesce to the non-conforming lots. Finally, Gallagher could not have relied on any sort of representation from the Township because there was no interaction from 1978 until 2004.

In accordance with the above, the decision of the trial court is reversed.

### ORDER

Now, March 25, 2009, the order of the Court of Common Pleas of Monroe County, in the above-captioned matter, is reversed.