Township of O'Hara, Council of O'Hara Township and O'Hara Township Planning Commission, Appellants *v.* Dominic N. DiSilvio and Eileen L. DiSilvio, his wife, Appellees.

Argued December 4, 1979, before Judges Crumlish, Jr., Mencer, Rogers, DiSalle and MacPhail. President Judge Bowman and Judges Wilkinson, Jr., Blatt and Craig did not participate.

*Jerry F. Palmer,* with him *Richard M. Zomnir, Thorp, Reed & Armstrong,* for appellants.

*Victor R. Delle Donne, Baskin and Sears,* for appellees.

OPINION BY JUDGE CRUMLISH, JR., April 28, 1980:

This is a zoning appeal by the Township of O'Hara (Township), the Council of O'Hara Township (Council), and the O'Hara Township Planning Commission (Commission) from an Allegheny County Common Pleas Court decision summarily approving both a proposed subdivision plan and a required right-of-way width variance. We affirm.

Dominic and Eileen DiSilvio (Appellees) own a four-acre tract of land in the Township which they proposed to subdivide for single-family dwellings. Tentative informal subdivision plans were prepared by Appellees' engineer and architect, and submitted to the Commission at informal review meetings on November 19, 1973, February 18, 1974 and January 20, 1975. Appellees were advised that a variance would be necessary to substitute a proposed 40 foot right-of-way in place of the 50 feet required by Section 55-17 (D) of the O'Hara Township Code (Code).[1]

---

[1] Chapter 55 of the O'Hara Code is the Township's subdivision ordinance. Article VI, Section 55-17(D) of the Code concerning street requirements provides in pertinent part:

D. Right-of-way width and paving width. The minimum width of the right of way shall be fifty (50) feet. . . .

On February 21, 1977, Appellees submitted a revised set of tentative plans to the Commission and the Township engineer proposing six lots. At some time before March 15, 1977, a second set of tentative plans proposing seven lots was submitted to the Commission for staff review. Though the plans met with a number of objections, the Commission explained to Appellees, "that the matter of primary concern is obtaining action on a variance from Council from the 50′ R/W [right-of-way] for the road. The Planning Commission does not take action on a preliminary review of this type."[2]

On May 5, 1977, Appellees filed a revised "Preliminary Plan of Lots" with the Township Secretary, which plan noted the necessity for acquiring the ten foot right-of-way width variance. However, Appellees failed to meet either the formal subdivision application requirements[3] or the formal variance filing re-

---

[2] The Planning Commission's Regular Meeting minutes of March 21, 1977, also included a short response to the Staff Review on the noncompliance of the 40′ right-of-way width, as follows:

[T]his would involve not a subdivision but a *zoning variance;* therefore, this Item must be reviewed by Council, as Council has the responsibility for roads; utilities, etc. (Emphasis added.)

[3] Article IV, Section 55-10 of the Code for subdivisions of Land states that:

A. Any person desiring to subdivide land or make improvements to land *shall file an application for a development permit on a form provided by the township, together with the filing fee,* which shall be accompanied by a preliminary plan prepared by a registered engineer or surveyor of the subdivision or improvements, with the Township Secretary. The developer may submit an informal plan to the Township Engineer for study and suggestion prior to submitting the preliminary plan to the Township Secretary. The developer may also file a plan with the Planning Commission and appear before the Planning Commission to discuss his plan before filing the application for preliminary plan approval. No fee or formal application is re-

quirements,[4] but the record does reveal an oral request to the Township Secretary for the variance.

At the Council's regularly scheduled meeting on June 14, 1977, Appellees' subdivision variance request for reduction in right-of-way standards from 50 to 40 feet was referred to the Commission for an advisory recommendation.[5] There was no discussion or con-

---

quired for this meeting. The subdivider shall be prepared to discuss the details of the proposed plan, including such items as the proposed use, existing features of the area, existing covenants, land characteristics, availability of community facilities and utilities, size of development, play areas or public areas, proposed protective covenants, proposed improvements, grading and utilities and street improvements. *The Planning Commission may make recommendations or suggest professional advice.* (Emphasis added.)

[4] Article VIII, Section 55-28 of the Code's Administrative Regulations concerning an application for variance states as follows:

A. There will be no variances or exceptions granted, in whole or in part, under this ordinance except as hereinafter set forth.

B. Where the Board of Commissioners, upon application in writing, advises that extraordinary hardship may result from strict compliance with these regulations, it may refer the case to the Township Planning Commission for the purpose of hearing the cause and determining substitute regulations to accommodate the specific hardships. If by adopting the substitute regulations, substantial justice may be done and the public interest may be secured, and the granting of the variance will not be detrimental to other property in the territory in which said property is situated, the Board of Commissioners may adopt the substitute regulations, provided that such variance will not have the effect of nullifying the intent and purpose of the spirit of these regulations.

[5] *See* Township Bill No. B-39-77, Resolution R-26-77, dated June 14, 1977. On June 20, 1977, after an in-depth presentation by Appellees' counsel concerning the variance request, the Commission focused discussion directly on the issue of hardship and returned the matter for further study.

sideration of the "proposed" subdivision plan to be found in the Council minutes.

Appellees' counsel then notified the Township by letter dated August 5, 1977, that the 90-day provision of Municipalities Planning Code (MPC) Section 508 would be invoked to gain summary approval of both preliminary subdivision plan and variance request.[6] In a response letter dated August 19, 1977, the Township Solicitor informed Appellees that the 90-day period would not begin to run until they met the formal subdivision filing requirements of Code Section 55-10.

Thereafter, the Commission met on October 17, 1977, and recommended that Council accept the variance request provided certain modifications were made in the plan.[7] Upon considering the Commission's recommendations on December 13, 1977, Council denied the variance.

---

[6] Section 508 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10508, states in pertinent part:

All applications for approval of a plat . . . whether preliminary or final, shall be acted upon by the governing body or the planning agency within such time limits as may be fixed in the subdivision and land development ordinance but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than ninety days following the date . . . the application is filed.

[7] The minutes of the October 17, 1977 Commission meeting read in pertinent part:

In the particular circumstances of the DiSilvio proposal it is the Planning Commission's position that a 40' R/W as specified on the plan would be acceptable provided that the entire proposed subdivision plan is revised with respect to, but not limited to, the following:

(1) That the c/s be shortened approximately 50' to avoid the steep topography on the western side of the lot.

Appellees then filed an action in mandamus with the Allegheny County Common Pleas Court to compel the approval of both the preliminary subdivision plan and the variance request. In granting Appellees' motion for peremptory judgment pursuant to Pa. R.C.P. No. 1098, the court approved the preliminary plan and variance on the basis of the Township's undue delay. The lower court held that the Council's mishandling of the matter served to not only outweigh Appellees' failure to comply with local filing requirements, but to trigger the 90-day summary approval provision entitling Appellees to relief. This appeal followed.

Appellants would have this Court reverse the lower court's decision on the grounds that Council's consideration was not for the entire subdivision "plat" but rather for the informal unwritten variance request, thus nullifying the application of Section 508's 90-day action provision, and that the trial court erred in granting Appellees' motion for peremptory judgment since the right to relief was not clear. Appellees counter that the Township Secretary's acceptance of the preliminary plan, the subsequent failure to advise them of deficiencies either at the time of application or within 30 days as required by Section 55-10(E) of the local ordinance, and the delayed December 14, 1977 variance decision should clearly activate Section 508 approval of the variance and plan. After a careful study of the record and underlying law, we will affirm.

Few cases dealing with the application of MPC Section 508's 90-day action provision to subdivision approval have turned on the issue of whether there

(2) That the location of Sylvan Lane within the 40' R/W and the grade over its entire length be revised.

(3) That the configuration of lots be considered with respect to zoning regulations and topography.

(4) That the proposed siting of homes with respect to frontyard setback be shown on each lot.

has been sufficient compliance with a Township's filing procedures. Appellees propose our decision in *Mid-County Manor, Inc. v. Haverford Township,* 22 Pa. Commonwealth Ct. 149, 348 A.2d 472 (1975), as a binding case in point. In *Mid-County,* Haverford Township hoped to avoid the 90-day action provision by claiming that the submission of sketch and site plans, the first of a three-step procedure for approval of development plans, did not constitute a proper application. Finding that Mid-County Manor unquestionably applied for approval of its ordinance defined "sketch and site plans" and met the locality's filing requirements, this Court held that they met the "plat" application definition for Section 508 purposes. In the case before us, the Township's filing requirements were not met, and it is unclear from the record whether Appellees made application on a preliminary subdivision plan as specified by Code Section 55-10 or for a subdivision variance as provided by Section 55-28.

Legally, Code Section 55-28(B) does not delineate whether a subdivision variance can be filed free of the influence of a Section 55-10 preliminary subdivision filing or as a first step to preliminary subdivision approval. The record reveals that Appellees were advised from the outset of the necessity for a right-of-way variance, and that their subdivision approval would probably be contingent upon this. Council and Commission discussions focused directly upon the variance application, with the possible exception of the Commission's October variance recommendation. The lower court documents this confusion in its August 21, 1978, opinion:

> Thus, the facts establish 'irregular' conduct by both parties to these proceedings. Clearly, plaintiffs' failure to comply with the filing prerequisites on May 5, 1977, would have barred the imposition of summary approval under Sec-

tion 508 absent the action taken by the Township Council. However, despite the deficiencies in plaintiffs' filing procedure, the Council proceeded to consider the *variance request* at its June 14, 1977 meeting and to take action on the matter in December 1977. . . . We have considered defendant's argument that to accept plaintiffs' position would permit applicants to move from informal to formal applications at will, to the peril of the Township development. However, in these proceedings, it was the Township that proceeded to consider *a plan* without demanding compliance with filing requirements. (Emphasis added.)

However, the lower court did conclude that Appellees filed a copy of the last proposed plan with the Borough Secretary, and that this plan was approved and processed for final plan purposes.[8]

This is the framework within which we are bound to weigh the several interests in reaching a decision. *Raum v. Tredyffrin Township Board of Supervisors,* 29 Pa. Commonwealth Ct. 9, 13-14, 370 A.2d 777, 781 (1977). Individual interests are protected on the one hand in that MPC Section 508 "was enacted to remedy indecision and protracted deliberations on the part of local governing bodies and to eliminate deliberate or negligent inaction on the part of governing officials." *Morris v. Northampton County Hanover Township Board of Supervisors,* 39 Pa. Commonwealth Ct. 466, 471, 395 A.2d 697, 699 (1978); *see Mid-County Manor, Inc. v. Haverford Township Board of Commissioners, supra,* at 157, 348 A.2d at 477. On the other hand, community interests require a checks and

---

[8] Our review of the record reveals the last proposed plan as including seven lots and a cul-de-sac running the full width of the plan..

balances system "to provide for the harmonious development of the township; for the coordination of existing streets with proposed streets, parks, and other features . . . ; for adequate open spaces for traffic, recreation, light and air; and to promote the health, safety, morals and general welfare of the citizens." O'Hara Code, Article III, Section 55-4. Though providing these safeguards in its Section 55-10 filing requirements, the Township failed to insure compliance, and in so doing, became caught in a web of inexplicitly drawn subdivision ordinances.

Though reluctant to reach this result, we are bound to our function of judicial review rather than legislative action. Given this matrix, we can only conclude that where a subdivision application and variance request are so factually, statutorily and legally intertwined, the failure of the landowner/developer to meet certain technical filing formalities will not outweigh the failure of Township officials to either object to the application within 30 days as required by Code Section 55-10(E) or render a decision on the preliminary plan and the variance within 90 days as mandated by MPC Section 508.[9]

Accordingly, we

#### ORDER

AND Now, this 28th day of April, 1980, the order of the Court of Common Pleas of Allegheny County, dated August 21, 1978, is hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.

Judge DiSALLE did not participate in the decision in this case.

---

[9] This decision precludes the necessity of our determining whether the lower court erred in granting Appellees' motion for peremptory judgment below.