## Stevens v. Huntington Township

*Clayton R. Wilcox,* for plaintiffs.
*Robert E. Campbell,* for defendant.

KUHN, *J.,* November 30, 1989 — Plaintiffs filed a complaint in mandamus against Huntington

Township seeking a "deemed approval" of a proposed plan and for variance requests.

## FINDINGS OF FACT

(1) Plaintiffs are John L. and Charlotte M. Stevens, husband and wife, who reside at 936 Five Points Road, New Oxford, Pennsylvania.

(2) Defendant is Huntington Township, a second class township, in Adams County, Pa.

(3) Plaintiffs are the owners of a tract of real estate containing 0.7 acres, acquired January 1985, and located at the corner of Pennsylvania Route 234 and Wireman's Mill Road in Huntington Township. The parcel is triangular in shape.

(4) The real estate is improved with a two-story frame and log dwelling and outhouse.

(5) The dwelling has no electrical, heat, water or sewer services.

(6) On August 24, 1987, Mr. Stevens attended a regular meeting of the Huntington Township Planning Commission and presented a plan showing the property and proposing placement of a mobile home and separate workshop at the western and widest portion of the property.

(7) Mr. Stevens was advised by the commission to approach the township supervisors for a variance regarding lot size, building set-back lines and the number of principal buildings.

(8) On September 10, 1987, Mr. Stevens attended a regular meeting of the Huntington Township supervisors and presented his plan and a letter seeking variance of the minimum lot size from 40,000 square feet to approximately 30,500 square feet (0.7 acres); of the 50-foot building set-back line and for the log dwelling not be considered a principal building because it would be only used for storage.

(9) The supervisors voted to reject the variance request, however, no written notice of this action was sent to plaintiffs.

(10) On February 11, 1988, Mr. Stevens attended a regular meeting of the supervisors and requested a reconsideration of his variance request.

(11) The supervisors agreed to meet at the site to study the situation.

(12) Approximately two weeks later Mr. Stevens and the supervisors met at the site.

(13) On April 14, 1988, Mr. Stevens attended a regular meeting of the supervisors, presented his plan and requested a reconsideration of his variance request.

(14) On April 14, 1988, the supervisors granted a variance for minimum lot size on the condition that plaintiff center the mobile home and remove the log dwelling within six months. The variance request for building set-back and number of principal dwellings was rejected.

(15) No written notice of the April 14, 1988, action by the supervisors was forwarded to plaintiffs.

(16) The minutes of the August 24, 1987, planning commission meeting state that plaintiffs submitted a "sketch" plan.

(17) Article VI of the Huntington Township Subdivision and Land Development Ordinance allows for submission of a "sketch" plan for consultation with the planning commission before submission of a preliminary plan.

(18) Article VII of the aforesaid ordinance sets forth the requirements for a preliminary plan.

(19) Plaintiffs' plan did not meet the requirements for a preliminary plan in the following respects: number of copies to be submitted; size of the plan; indication of north; date; topographical con-

tour lines; name and address of developer; identity of adjoining owners; indication of engineer or surveyor; and no place for planning commission and supervisor signatures for approval or rejection.

(20) The supervisors believed plaintiffs were submitting a "sketch" plan for review.

## DISCUSSION

Plaintiffs allege that they are entitled to a deemed approval of their proposal pursuant to section 508 of the Pennsylvania Municipalities Planning Code, 53 P.S. §10508, which provides, in pertinent part:

"§10508. *Approval of Plats —*

"All applications for approval of a plat . . . whether preliminary or final, shall be acted upon by the governing body or the planning agency within such time limits as may be fixed in the subdivision and land development ordinance but the governing body or the planning agency shall render its decision and communicate it to the applicant not later than 90 days following the date of the regular meeting . . . next following the date the application is filed . . .

"(1) The decision . . . shall be in writing . . .

"(3) Failure . . . to render a decision and communicate it to the applicant within the time and in the manner required herein shall be deemed an approval of the application in terms as presented . . ."

The code defines a "plat" as "the map or plan of a subdivision or land development, whether preliminary or final." 53 P.S. §10107. Plaintiffs clearly were not seeking subdivision, however, "land development" is defined as "(1) The improvement of one lot . . . for any purpose involving: (1) a group of two or more residential or non-residential buildings . . . " 53 P.S. §10107.

The Huntington Township Subdivision and Land Development Ordinance of 1979 similarly defines "land development" as:

"[The] improvement of one lot ... for any purpose involving (a) a group of two or more buildings ... " Article III, section 300(16).

Plaintiffs presented a map or plan of land development, as set forth in these definitions.

The principal issue is whether the plan submitted was a voluntary sketch plan not subject to the provisions of section 508 of the code, as the township contends, or whether it was a formal preliminary plan triggering the provisions of section 508, as plaintiffs contend.

The ordinance sub judice allows, but does not mandate, a three-step submission procedure for land development requests. The land developer is encouraged to prepare a sketch plan for purposes of generally illustrating and discussing the proposed project with the planning commission before incurring the time and expense of preparing a more formal preliminary plan. Section 601. An optional sketch plan submission would not trigger the provisions of section 508 of the code, *Raccoon Mountain Inc. v. Perry County Planning Commission*, 50 Pa. Commw. 613, 413 A.2d 1170 (1980), whereas a mandatory sketch plan requirement would trigger a deemed approval, *Croft v. Board of Supervisors of Middletown Township*, 76 Pa. Commw. 488, 464 A.2d 625 (1980).

Plaintiffs suggest this case is controlled by *Township of O'Hara v. DiSilvio*, 51 Pa. Commw. 50, 413 A.2d 1174 (1980). There the landowners prepared tentative informal subdivision plans which were submitted to the planning commission for review. Having been advised that a variance would be necessary for the proposed right-of-way width they

submitted two more tentative plans and then finally filed a "preliminary plan of lots" which noted thereon the need for a variance. The landowners did not follow all the subdivision application or formal variance filing requirements. No action was taken by the township. In a mandamus action the court granted approval of the plan pursuant to code section 508. The court concluded that the failure of the landowner to meet certain technical filing formalities would not outweigh the failure of the township to either object to the application deficiencies, as required by the local ordinance, or render a decision on the preliminary plan and the variance, as required by section 508.

Unfortunately for plaintiffs we do not find *DiSilvio* to be dispositive. There, the landowners clearly filed a "preliminary plan." If the township believed the plan was deficient it was required to so notify the landowner. In the case sub judice the issue is whether the plan submitted was a sketch plan or a preliminary plan. Disposition of that issue requires different considerations than faced the *DiSilvio* court. The township would have no reason to call to the landowner's attention deficiencies in a sketch plan because there are no technical filing or other requirements for such a plan. On the contrary, the township ordinance has very specific requirements for a preliminary plan. Therefore, if we conclude that the plan was a sketch plan, *Raccoon Mountain Inc., supra,* applies. If we conclude that the plan was a preliminary plan, only then does *DiSilvio* apply.

We have found no case delineating the difference between a sketch plan and a preliminary plan. Our findings set forth, however, the extent to which plaintiffs' plan did not comply with ordinance requirements for a preliminary plan. Furthermore,

plaintiffs did not label their plan a preliminary plan. Whatever may have been plaintiffs' intention we believe it is incumbent upon them to clearly identify for the township whether their plan is sketch or preliminary, especially where, as here, the plan was significantly deficient in meeting the basic requirements for a preliminary plan. Municipal officials are faced with ever-increasing and perplexing problems and concerns. Therefore, they should not be required to guess which procedure a land developer is pursuing. The planning commission minutes of August 24, 1987, show that those members believed plaintiffs submitted a sketch plan and testimony from the supervisors demonstrated that they also believed plaintiffs were submitting a sketch plan.

## CONCLUSION

Under these circumstances we decline plaintiffs' request for a deemed approval.

Accordingly, we enter the attached

## ORDER OF COURT

And now, November 30, 1989, plaintiffs' complaint in mandamus is hereby dismissed. Costs to be paid by plaintiffs.